IN THE UNITED STATES DISTRICT COURT

OF WESTERN PENNSYLVANIA


UNITED STATES OF AMERICA,           CRIMINAL ACTION

              vs.                   No. 12-91

KHALIFA ALI AL-AKILI,

           Defendant.

        _____


            Transcript of CHANGE OF PLEA HEARING
                 held on NOVEMBER 27, 2012
      United States District Court, Pittsburgh, Pennsylvania
         BEFORE:  HONORABLE MARK HORNAK, DISTRICT JUDGE


APPEARANCES:

For USA:                        James R. Wilson, Esq.
                                Assistant U.S. Attorney
                                U.S. Attorney's Office
                                700 Grant Street
                                Pittsburgh, PA 15219


For the Defendant:              Marketa Sims, Esq.
                                Federal Public Defender's Office
                                1001 Liberty Avenue
                                Pittsburgh, PA 15222-3716




Court Reporter:                 Karen M. Earley, RDR-CRR
                                6260 U.S. Courthouse
                                700 Grant Street
                                Pittsburgh, PA 15219
                                412-201-2660


Proceedings reported by mechanical stenography.
Transcript produced by computer-aided transcription.

```
 1                    P R O C E E D I N G S
 2    (November 27, 2012.  In open court.)
 3              THE COURT:  Good afternoon, everyone.  Please be
 4    seated.
 5              This is the time and date set for a change of plea
 6    hearing in the case of United States of America versus Khalifa
 7    Ali Al-Akili.
 8              Will counsel for the United States of America
 9    please enter his appearance.
10              MR. WILSON:  Thank you, Your Honor.
11              James Wilson on behalf of the United States.
12              THE COURT:  Thank you, Mr. Wilson.  Who is with you
13    at counsel table today?
14              MR. WILSON:  This is Jay Neely.  Mr. Neely actually
15    is an air marshal on assignment working with a task force
16    working with the FBI.
17              THE COURT:  Will counsel for the defendant please
18    enter her appearance.
19              MS. SIMS:  May it please the Court, Marketa Sims on
20    behalf of Mr. Al-Akili.
21              THE COURT:  Who is seated with you at counsel
22    table?
23              MS. SIMS:  The defendant Khalifa Ali Al-Akili.
24              THE COURT:  Thank you.
25              Mr. Al-Akili, the Court is informed you wish to
```

1  plead guilty to Count 1 of the indictment in this matter, is

2  that correct?

3             THE DEFENDANT:  Yes, sir.

4             THE COURT:  Ms. Sims and Mr. Al-Akili and

5  Mr. Wilson, I would ask you to please come up to the front

6  podium.

7             I ask everyone if they can keep their voices up so

8  Ms. Earley can make an accurate record of what we're working

9  on today.

10             Before accepting a guilty plea, there are a number

11  of questions I must ask you in order to assure that it would

12  be a valid plea.

13             If at any time you do not understand any of the

14  questions I ask you, please let me know and I will further

15  explain the question to you, or if at any time you wish to

16  consult with your attorney, Ms. Sims, please let me know

17  immediately and I will provide you with the time to consult

18  with her in private.

19             I give you these instructions because it is

20  essential to a valid plea that you understand each question

21  before you answer.

22             Mr. Babik, will you please administer the oath to

23  the defendant.

24             **KHALIFA ALI AL-AKILI, DEFENDANT HEREIN, WAS SWORN.**

25             THE CLERK:  Please state your name for the record.

1          THE DEFENDANT:  Khalifa Ali Al-Akili.

2          THE COURT:  Mr. Al-Akili, please make sure you use

3   the microphone so Ms. Earley can hear everything you say and I

4   can hear everything you say.

5          Sir, do you understand having declared and affirmed

6   to tell the truth, your answers to my questions are subject to

7   the penalties of perjury or for making a false statement if

8   you do not answer truthfully?

9          THE DEFENDANT:  Yes, sir.  Yes.

10          THE COURT:  Would you please state your full name

11   for the record.

12          THE DEFENDANT:  Khalifa Ali Al-Akili.

13          THE COURT:  Sir, is it also correct in the past you

14   have been known by the name James Marvin Thomas, Junior, and

15   you are one in the same person?

16          THE DEFENDANT:  Yes.

17          THE COURT:  How old are you?

18          THE DEFENDANT:  35.

19          THE COURT:  How far did you go in school?

20          THE DEFENDANT:  I received my GED and I also went

21   to Kaplan Career Institute but I didn't complete the course.

22          THE COURT:  Have you been able to communicate with

23   your lawyer, Ms. Sims, without any problem?

24          THE DEFENDANT:  Yes.

25          THE COURT:  Ms. Sims, have you been able to

```
 1    communicate with your client without any problems?

 2              MS. SIMS:  Yes, Your Honor.

 3              THE COURT:  Mr. Al-Akili, have you taken any

 4    prescribed or non-prescribed drugs or consumed any alcohol in

 5    the last 24 hours?

 6              THE DEFENDANT:  No.

 7              THE COURT:  Are you now or have you recently been

 8    under the care of a doctor?

 9              THE DEFENDANT:  No.

10              THE COURT:  Are you now or have you recently been

11    under the care of a psychiatrist or psychologist?

12              THE DEFENDANT:  No.

13              THE COURT:  Sir, are you now or have you recently

14    been hospitalized or treated for narcotic or drug addiction or

15    abuse?

16              THE DEFENDANT:  No, Your Honor.

17              THE COURT:  Sir, do you understand what is

18    happening here today?

19              THE DEFENDANT:  Yes, I do.

20              THE COURT:  Mr. Wilson, on behalf of the United

21    States, do you have any doubt as to the defendant's competence

22    to enter a plea of guilty at this time?

23              MR. WILSON:  I have none, Your Honor.

24              THE COURT:  Ms. Sims, do you have any doubt as to

25    the defendant's competence to enter a plea of guilty at this
```

1  time?

2          MS. SIMS:  I do not, Your Honor.

3          THE COURT:  Based on the answers provided by the

4  defendant, Mr. Al-Akili, the representations of his counsel

5  and counsel for the United States of America, the Court finds

6  that the defendant is competent to participate in the

7  proceedings today.

8          Mr. Al-Akili, am I correct Ms. Sims is your lawyer

9  and she is representing you for purposes of today's proceeding

10  in your case in this court?

11          THE DEFENDANT:  Yes, sir.

12          THE COURT:  Have you had ample opportunity and

13  sufficient time to discuss your case and today's proceedings

14  with your lawyer?

15          THE DEFENDANT:  Yes, sir.

16          THE COURT:  Are you satisfied with the job that she

17  has done for you?

18          THE DEFENDANT:  Yes, I am.

19          THE COURT:  Sir, have you been furnished with a

20  copy of the charges against you?

21          THE DEFENDANT:  Yes, I have.

22          THE COURT:  Have you discussed with your lawyer,

23  Ms. Sims, the charges that are in the indictment which are the

24  charges to which you intend to plead guilty?

25          THE DEFENDANT:  Yes, sir.

1          THE COURT:  Sir, do you understand that you are

2     charged with a felony, namely, that on or about July 4, 2010,

3     in the Western District of Pennsylvania, after having been

4     convicted in the courts of the County of Westmoreland of the

5     Commonwealth of Pennsylvania, on or about October 25, 2000, in

6     Criminal Action No. 4505C1999, of the crime of possession with

7     intent to deliver a controlled substance, a felony, along with

8     the crime of delivery of a controlled substance, a felony,

9     which are crimes punishable by imprisonment for a term

10    exceeding one year, you did knowingly possess, in and

11    affecting interstate commerce, a .22-caliber rifle in

12    violation of Title 18 of the United States Code, Section

13    922(g)(1)?

14          THE DEFENDANT:  Yes, sir.

15          THE COURT:  Do you understand these charges and

16    have they been explained to you by your lawyer?

17          THE DEFENDANT:  Yes, I understand them.

18          THE COURT:  Sir, the Court is now ready to consider

19    your stated intent to plead guilty to Count 1 of the

20    indictment.

21          Mr. Al-Akili, do you understand if you would plead

22    not guilty, you have the right to persist in that plea and to

23    be assisted by a lawyer at the trial and in all other phases

24    of the processing of those charges?

25          THE DEFENDANT:  Yes, sir.

1     THE COURT:  Do you also understand that if you

2 qualify financially, you're entitled to be assisted by a

3 lawyer at no cost to you at all phases of the processing of

4 these charges against you?

5     THE DEFENDANT:  Yes, sir.

6     THE COURT:  Sir, do you also understand that under

7 the Constitution and laws of the United States of America, you

8 are entitled to a speedy trial by a judge and jury on the

9 charges contained in the indictment?

10     THE DEFENDANT:  Yes, sir.

11     THE COURT:  Do you also understand you have the

12 right to plead not guilty and to persist in that plea?

13     THE DEFENDANT:  Yes.

14     THE COURT:  Sir, do you understand that at a trial,

15 you would be presumed to be innocent?

16     THE DEFENDANT:  Yes, I do.

17     THE COURT:  Do you also understand that at a trial,

18 you would not have to prove that you were innocent, the

19 government would be required to prove your guilt by competent

20 evidence and beyond a reasonable doubt before you could be

21 found guilty of any charge against you?

22     THE DEFENDANT:  Yes, sir.

23     THE COURT:  Sir, do you understand that at a trial,

24 the jury must be unanimous in order to find you guilty on the

25 charges against you?

```
1              THE DEFENDANT:  Yes, I do.

2              THE COURT:  Sir, do you understand that you would

3    have the right to participate in the selection of the jury and

4    that you would have the right to strike or eliminate any

5    prospective juror if it was demonstrated that that juror was

6    unable to render a fair and impartial verdict?

7              THE DEFENDANT:  Yes, sir.

8              THE COURT:  Do you also understand that in

9    addition, you would have the right to strike ten jurors

10   without assigning any reason at all?

11             THE DEFENDANT:  Yes, sir.

12             THE COURT:  Sir, do you understand that in the

13   course of a trial, the witnesses for the government would have

14   to come to court and testify in your presence?

15             THE DEFENDANT:  Yes, sir.

16             THE COURT:  Do you also understand that in the

17   course of a trial, your attorney could cross-examine the

18   witnesses for the government, object to any evidence offered

19   by the government, and also offer evidence on your behalf?

20             THE DEFENDANT:  Yes, sir.

21             THE COURT:  Mr. Al-Akili, do you understand in the

22   course of a trial, that if you qualify as being financially

23   unable to pay witness fees to witnesses you wish to call on

24   your behalf, the government would be required to pay those

25   witness fees?
```

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  Do you also understand that at a trial,

3  you would have the right to testify if you chose to do so?

4          THE WITNESS:  Yes, sir.

5          THE COURT:  Sir, do you understand that at a trial,

6  you also would have the right not to testify and no inference

7  or suggestion of guilt could be drawn from the fact that you

8  did not testify?

9          THE DEFENDANT:  Yes.

10          THE COURT:  Mr. Al-Akili, if you plead guilty and

11  the Court accepts your plea, do you understand that you will

12  waive your right to a trial and the other rights I just

13  discussed, there will be no trial, and the Court will enter a

14  judgment of guilt and then sentence you on the basis of your

15  guilty plea after considering a presentence report?

16          THE DEFENDANT:  Yes.

17          THE COURT:  Sir, do you understand that if you

18  plead guilty, you will also have to waive your right not to

19  incriminate yourself since I may ask you questions about what

20  you did in order to satisfy the Court that you are guilty as

21  charged and you will have to acknowledge your guilt?

22          THE DEFENDANT:  Yes, sir.

23          THE COURT:  Mr. Al-Akili, having discussed your

24  rights with you, is it still your desire to plead guilty?

25          THE DEFENDANT:  Yes, sir.

1          THE COURT:  Mr. Al-Akili, do you understand that

2    the Sentencing Guidelines set forth by the United States

3    Sentencing Commission are only advisory to the Court?

4          THE DEFENDANT:  Yes, sir.

5          THE COURT:  Therefore, for good reason, subject to

6    any agreements contained in an applicable plea agreement that

7    would be accepted by the Court, the Court may sentence you

8    outside the recommended guideline range but within the

9    applicable statutory or minimum and maximum penalties?

10          THE DEFENDANT:  Yes, sir.

11          THE COURT:  Do you also understand that the Court

12    would not determine the advisory guideline ranges for your

13    case until after the presentence report has been completed and

14    both you and the government and your lawyers have had an

15    opportunity to challenge the facts that are reported to me by

16    the probation office?

17          THE DEFENDANT:  Yes, sir.

18          THE COURT:  Mr. Al-Akili, do you understand that

19    under the Sentencing Reform Act of 1984, parole has been

20    abolished and if you are sentenced to prison, you will not be

21    eligible for parole?

22          THE DEFENDANT:  Yes, sir.

23          THE COURT:  Do you understand, sir, that in

24    determining your sentence, the Court will be obligated to

25    calculate the sentencing guideline range and to consider that

1    range, any possible departures under the Sentencing Guidelines

2    and the other sentencing factors under Title 18, United States

3    Code, Section 3553, including any applicable provisions of a

4    plea agreement that has been accepted by the Court?

5            THE DEFENDANT:  Yes, sir.

6            THE COURT:  Mr. Al-Akili, at this time the Court

7    would advise you concerning the minimum and total maximum

8    sentence as provided by law.

9            Sir, do you understand that the maximum sentence as

10    to Count 1 is any or all of the following:

11           Not more than ten years imprisonment, unless it is

12    determined or stipulated that you have three previous

13    convictions for violent felony or serious drug offense or

14    both, in which case pursuant to 18 U.S.C., Section 924(e), the

15    term of imprisonment is not less than 15 years to a maximum of

16    life imprisonment, a fine not to exceed $250,000 may also be

17    imposed in any case?

18           THE DEFENDANT:  Yes, sir.

19           THE COURT:  Do you understand that if the Court

20    were to sentence you to any term of imprisonment, the Court

21    would also impose a term of supervised release of not more

22    than three years as to such count or a term of supervised

23    release of not more than five years if the sentencing

24    enhancement for prior convictions applies?

25           THE DEFENDANT:  Yes, sir.

1          THE COURT:  Sir, do you understand that if you were

2   to violate the terms of supervised release, the Court would

3   revoke the supervised release, you would be incarcerated and

4   no credit would be given to you for the time you previously

5   had been on supervised release?

6          THE DEFENDANT:  Yes, sir.

7          THE COURT:  It is the Court's understanding that

8   forfeiture may also be an issue in this case, is that correct?

9          MR. WILSON:  I don't believe that's the case.

10          MS. SIMS:  No.

11          THE COURT:  So the parties stipulate that

12   forfeiture is not an issue in this case, Ms. Sims?

13          MS. SIMS:  That's correct.

14          MR. WILSON:  That's correct.

15          MS. SIMS:  The gun was not recovered.

16          THE COURT:  It's also the Court's understanding

17   restitution is not an issue in this case, is that correct?

18          MR. WILSON:  That's correct.

19          THE COURT:  Ms. Sims?

20          MS. SIMS:  Yes.

21          THE COURT:  Mr. Al-Akili, do you also understand

22   that any sentence imposed will include a special assessment of

23   $100 pursuant to Title 18, United States Code, Section 3013?

24          THE DEFENDANT:  Yes, I do.

25          THE COURT:  Do you understand, sir, that the

1    offense to which you are pleading guilty is a felony offense,

2    that if your plea is accepted, you will be adjudged guilty of

3    the offense and that such an adjudication may deprive you of

4    valuable rights, such as the right to vote, the right to

5    certain employment, the right to public office, the right to

6    serve on a jury, and the right to possess any kind of firearm,

7    weapon, or dangerous device?

8            THE DEFENDANT:  Yes, sir.

9            THE COURT:  Mr. Al-Akili, are you a citizen of the

10   United States of America?

11           THE DEFENDANT:  Yes, I am.

12           THE COURT:  Sir, were you born in the United States

13   of America?

14           THE DEFENDANT:  Yes, I was.

15           THE COURT:  Mr. Al-Akili, do you understand that

16   your guilty plea might negatively affect any probation or

17   parole that you might now be serving?

18           THE DEFENDANT:  Yes, I do.

19           THE COURT:  Mr. Al-Akili, do you understand that

20   this Court may or may not approve any plea agreement which you

21   might enter into and that you have a duty to disclose any such

22   agreement to the Court.  If you do not disclose the agreement

23   now, you may not later assert the existence of any plea

24   negotiation or plea agreement.

25               Ms. Sims and Mr. Wilson, is there a plea agreement

1    in this case?

2              MS. SIMS:  Yes, Your Honor.

3              MR. WILSON:  Yes, there is.

4              THE COURT:  Mr. Al-Akili, the Court has been

5    informed there's been a plea agreement entered into between

6    you, Mr. Al-Akili, and your lawyer and the lawyer for the

7    United States, is that correct?

8              THE DEFENDANT:  Yes, it is.

9              THE COURT:  Mr. Wilson, will you please show the

10   defendant a copy of the plea agreement letter.

11             Mr. Wilson, it is my understanding this is a plea

12   agreement that includes provisions pursuant to Federal Rule of

13   Criminal Procedure Rule 11(c)(1)(C), is that correct?

14             MR. WILSON:  That is.

15             THE COURT:  Is that correct, Ms. Sims?

16             MS. SIMS:  Yes.

17             THE COURT:  Mr. Al-Akili, have you seen this plea

18   agreement letter before?

19             THE DEFENDANT:  Yes, I have.

20             THE COURT:  Have you read it yourself in its

21   entirety?

22             THE DEFENDANT:  Yes, I have.

23             THE COURT:  Has your lawyer reviewed it with you?

24             THE DEFENDANT:  Yes, she has.

25             THE COURT:  Mr. Al-Akili, did you sign the last

1    page of that plea agreement letter?

2              THE DEFENDANT:  Yes, I have, sir.

3              THE COURT:  By signing that plea agreement letter,

4    did you agree to the terms that are set forth in that letter?

5              THE DEFENDANT:  Yes, I have.

6              THE COURT:  Mr. Wilson, before we go to sidebar,

7    would you at this point on the record, please, review the

8    essential terms of the plea agreement for the Court and the

9    defendant.

10             MR. WILSON:  Yes, Your Honor.  I'll pass up the

11   original to the Court.

12             Your Honor, in Subpart A, the defendant agrees to

13   enter a plea of guilty to the single count of the indictment,

14   which the Court has already outlined in this matter.

15             In Subpart A3, the defendant acknowledges that he

16   is waiving his right to appeal except under limited conditions

17   as set forth in Subparagraphs A and B, which I'm sure the

18   Court is familiar with, as is Ms. Sims, as the standard

19   conditions in plea letters proffered by the United States

20   Attorney's Office.

21             In Subpart B, Your Honor, the United States

22   indicates that it will reserve its right to inform the Court

23   at the time of sentencing of those factors, which are material

24   to the Court's fashioning an appropriate sentence.

25             In Subpart C, the parties agree as to the maximum

 1   penalties as the Court has already outlined them.

 2          The parties also agree relative to the sentence in

 3   this case set forth in Subpart C3, the particulars of that,

 4   Your Honor, may be addressed at sidebar.

 5          Those are the -- in broad sweep, those are the

 6   provisions of the plea letter as set forth in the document

 7   which I hand to the Court.

 8          THE COURT:  Thank you very much, Mr. Wilson.

 9          Mr. Al-Akili, I'm looking at the last page of the

10   plea agreement.  There is a signature line which underneath it

11   bears the typed name Khalifa Ali Al-Akili, a/k/a James Marvin

12   Thomas, Junior.  There is a signature on that line.

13          Mr. Al-Akili, is that, in fact, your signature?

14          THE DEFENDANT:  Yes.

15          THE COURT:  It bears the date 11-27-12, which is

16   today's date.  Did you sign it today?

17          THE DEFENDANT:  Yes.

18          THE COURT:  I note under the witness section the

19   typed name Marketa Sims, Esq., counsel for defendant Khalifa

20   Ali Al-Akili, a/k/a James Marvin Thomas, Junior.

21          Ms. Sims, is that, in fact, your signature?

22          MS. SIMS:  Yes, it is, Your Honor.

23          THE COURT:  Mr. Al-Akili, by placing your signature

24   on the last page of this plea agreement, did you intend to

25   indicate your acceptance and agreement of the terms set forth

1    in the plea agreement letter?

2              THE DEFENDANT:  Yes, I did.

3              THE COURT:  At this point, Mr. Babik, we'll go to

4    sidebar.

5              (Sidebar discussion held as follows:)

6              (Sidebar discussion was concluded.)

7              THE COURT:  We are away from sidebar and on the

8    record.

9              Ms. Sims, do you agree the essential terms of the

10   plea agreement have been stated to the defendant by counsel

11   for the United States?

12             MS. SIMS:  I do.

13             THE COURT:  Mr. Al-Akili, have you heard the terms

14   of the plea agreement as it has been reviewed for you by the

15   Court and Mr. Wilson?

16             THE DEFENDANT:  Yes.

17             THE COURT:  Mr. Al-Akili, has the attorney for the

18   United States, Mr. Wilson, correctly stated the plea agreement

19   as you understand it?

20             THE DEFENDANT:  Yes, he has.

21             THE COURT:  Mr. Al-Akili, does the plea agreement

22   set forth your understanding and agreement with the government

23   concerning the disposition of the charges pending against you?

24             THE DEFENDANT:  Yes.

25             THE COURT:  Sir, do you have any other agreement or

1    understanding with the United States government concerning the

2    charge pending against you that is not set forth in the plea

3    agreement?

4              THE DEFENDANT:  No, I don't.

5              THE COURT:  Mr. Al-Akili, do you understand that

6    ordinarily, you or the government may have the right to appeal

7    any sentence the Court imposes.

8              However, the Court notes that in the provisions of

9    the plea agreement, you and the government agree that you

10   would waive, that means give up, your right to take a direct

11   appeal from your conviction and sentence subject to the

12   following exceptions:

13             If the United States appeals from the sentence, you

14   may then take a direct appeal from the sentence in that

15   circumstance, do you understand that?

16             THE DEFENDANT:  Yes, I do.

17             THE COURT:  You may also take a direct appeal from

18   the sentence only on the following grounds:

19             The sentence exceeds the applicable statutory

20   limits set forth in the United States Code or the sentence

21   imposed unreasonably exceeds the guideline range determined by

22   the Court under the Sentencing Guidelines, do you understand

23   that?

24             THE DEFENDANT:  Yes, sir.

25             THE COURT:  To repeat, by these provisions of the

1   plea agreement, you are giving up the right to appeal both the

2   validity of your plea of guilty and except as specifically set

3   forth in the plea agreement, your sentence, do you understand

4   that?

5           THE DEFENDANT:  Yes, sir.

6           THE COURT:  Further, under the provisions of the

7   plea agreement, you will have also waived the right to file a

8   motion to vacate your sentence under Title 28 of the United

9   States Code, Section 2255, and the right to file any other

10  collateral proceeding attacking your conviction or sentence,

11  do you understand that?

12          THE DEFENDANT:  Yes, sir.

13          THE COURT:  Mr. Al-Akili, has anyone made a threat

14  to you or to anyone else that has forced you to waive these

15  rights?

16          THE DEFENDANT:  No, sir.

17          THE COURT:  Has anyone made any promise to you

18  other than the promises that are in the plea agreement that

19  has induced you or caused you to waive these rights?

20          THE DEFENDANT:  No, sir.

21          THE COURT:  The Court finds that the defendant has

22  entered into these waivers knowingly and voluntarily.

23          The Federal Rule of Criminal Procedure 11 provides,

24  in relevant part, that when a plea agreement specifies that an

25  attorney for the government will move to dismiss a certain

1  charge or will agree that a specific sentence or sentencing

2  range is the appropriate disposition of a case or that a

3  particular provision of the Sentencing Guidelines, or a policy

4  statement, does not apply or is the case here, that the Court,

5  if it accepts the plea agreement, will be obligated to impose

6  the sentence agreed to in the plea agreement.

7       The Court may accept the agreement, reject it, or

8  defer a decision until the Court has reviewed the presentence

9  report.

10      I will refer this matter to the probation office

11  for the preparation of a Presentence Investigation Report and

12  recommendation.

13      In this connection, Mr. Al-Akili, you will be

14  interviewed by the probation office and the Court will inspect

15  the report they prepare in order to determine an appropriate

16  sentence in your case, consistent with the terms of your plea

17  agreement.

18      Are you willing to be interviewed by the probation

19  office and have me review that report prior to entering your

20  sentence?

21      THE DEFENDANT:  Yes, sir.

22      THE COURT:  The Court will defer its decision on

23  acceptance of the plea agreement until it has reviewed the

24  presentence report and any addendum that will be prepared by

25  the probation officer.

1          Mr. Al-Akili, do you understand that after

2    reviewing the presentence report and any addendum thereto, the

3    Court may accept or reject the plea agreement in this case?

4          THE DEFENDANT:  Yes, sir.

5          THE COURT:  You understand that if this Court after

6    reviewing the presentence report and any addendum thereto

7    rejects the plea agreement, the Court will not be required to

8    follow the plea agreement and you will be given an opportunity

9    to withdraw your plea and proceed to a trial on the charge

10   that is contained in the indictment in this case?

11         THE DEFENDANT:  Yes, sir.

12         THE COURT:  Do you understand that if this Court

13   rejects the plea agreement and you do not withdraw your plea,

14   the Court may then dispose of the case in a matter less

15   favorable to you than the terms that are in the plea

16   agreement?

17         THE DEFENDANT:  Yes, sir.

18         THE COURT:  You must understand that if I do not

19   approve the plea agreement and if you then do not withdraw

20   your plea, any recommendation of sentence which may then be

21   made or agreed to by your lawyer or made by the government or

22   any agreement not to oppose your lawyer's requested sentence

23   will not be binding on the Court and you could, on the basis

24   of your guilty plea, receive up to the maximum sentence

25   provided by law?

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  Do you also understand that if I do not

3     approve the plea agreement in this case and if you then do not

4     withdraw your plea of guilty, I will not be obligated to

5     follow or apply anything that's in that plea agreement?

6          THE DEFENDANT:  Yes, sir.

7          THE COURT:  Do you understand that if in those

8     circumstances I decline to impose a sentence recommended by

9     the prosecutor or by your lawyer and impose a more severe

10    sentence, you will not on that basis be entitled to then

11    withdraw your guilty plea?

12         THE DEFENDANT:  Yes, sir.

13         THE COURT:  Mr. Babik, do we have a copy of the

14    plea agreement?

15         THE CLERK:  Yes, Your Honor.

16         THE COURT:  Mr. Wilson, other than the plea

17    agreement that has been presented here today, did the

18    government tender to counsel for the defendant any other

19    formal plea agreement offer?

20         MR. WILSON:  We did not, Your Honor.

21         THE COURT:  Ms. Sims, did you receive any formal

22    plea agreement offer from the government which you did not

23    communicate to the defendant?

24         MS. SIMS:  I did not, Your Honor.

25         THE COURT:  Mr. Al-Akili, has anyone made a threat

1 to you or to anyone else that has forced you or caused you to

2 plead guilty?

3    THE DEFENDANT:  No.

4    THE COURT:  Mr. Al-Akili, has anyone made any

5 promise other than those contained in the plea agreement that

6 has caused you or induced you to plead guilty?

7    THE DEFENDANT:  No, Your Honor.

8    THE COURT:  Mr. Al-Akili, other than the matters

9 set forth in the plea agreement, has anyone made any

10 prediction or promise as to what your actual sentence will be

11 other than what I told you about the applicable sentences in

12 this case?

13    THE DEFENDANT:  No, Your Honor.

14    THE COURT:  Mr. Al-Akili, has anything I said here

15 today, other than what I told you about the minimum and

16 maximum sentence and the matters set forth in the plea

17 agreement, told you or suggested to you what your actual

18 sentence will be?

19    THE DEFENDANT.  Has it told me?

20    THE COURT:  Yes, sir.

21    THE DEFENDANT:  Yes, Your Honor, in the agreement.

22    THE COURT:  The terms of the agreement?

23    THE DEFENDANT:  Right, yes, sir.

24    THE COURT:  We reviewed that already.

25    THE DEFENDANT:  Yes, sir.

1          THE COURT:  Ms. Sims, are you confident

2    Mr. Al-Akili understands those provisions of the applicable

3    plea agreement?

4          MS. SIMS:  I am, Your Honor.

5          THE COURT:  Mr. Al-Akili, have you been instructed

6    by your lawyer, the lawyer for the government, or anyone else

7    to respond untruthfully to any question I've asked you today?

8          THE DEFENDANT:  No, I haven't.

9          THE COURT:  Have you, sir, in fact, answered

10   truthfully all of the questions I asked you today?

11         THE DEFENDANT:  Yes, I have.

12         THE COURT:  Mr. Al-Akili, do you have any physical

13   or mental illness or condition which would or might affect

14   your ability to understand the rights I explained to you or

15   affect the voluntary nature of your plea today?

16         THE DEFENDANT:  No, I don't.

17         THE COURT:  Mr. Wilson, what in summary would be

18   the government's evidence as to the charges in the indictment

19   and the elements of the offenses charged which the government

20   must prove at the time of trial?

21         Mr. Al-Akili, I intend to ask you whether you agree

22   with the government's summary of what you did.  Before I ask

23   you that, I must advise you your answers may later be used

24   against you in a prosecution of perjury or making a false

25   statement if you do not the answer them truthfully.

1          Mr. Wilson, the floor is yours.

2          MR. WILSON:  Your Honor, first of all, with regard

3    to the elements of the offense under Title 18, United States

4    Code, Section 922(g)(1), in order for the United States to

5    merit a verdict, we have to prove the following three

6    elements:

7          First, that the defendant was convicted of a crime

8    punishable by imprisonment for a period exceeding one year.

9          Second, that the defendant thereafter knowingly

10   possessed a firearm.

11         Third, that the firearm was possessed in or

12   affecting interstate commerce.

13         Those are the three elements that it is our burden

14   to demonstrate beyond a reasonable doubt.

15         Your Honor, the government has available to testify

16   a number of witnesses.  All of the evidence and testimony

17   stems from an incident at a place called the Trafford

18   Sportsmen's Club here in the Western District of Pennsylvania

19   just by the border of Westmoreland County, Allegheny County,

20   which is, in fact, an outdoor shooting range.

21         The testimony would be essentially, Your Honor,

22   that the defendant, accompanied by two other individuals,

23   traveled on July the 4th of 2010 to the Trafford Sportsmen's

24   Club in a green Jeep Sahara.  Having arrived at the Trafford

25   Sportsmen's Club, one of the individuals who traveled with the

defendant provided a .22 long rifle and a .38-caliber pistol.

This individual would testify that the defendant fired the rifle multiple times that particular day.  He does not recall whether the defendant fired the .38-caliber handgun or not.

Later that day, Your Honor, after the trip to the Sportsmen's Club on the border between Allegheny and Westmoreland County, this individual, who traveled with the defendant to the shooting range who owned the weapons in question, sent to the defendant a series of emails, and these emails had attached to them both photographs and videos of the activities that took place that day at the Trafford Sportsmen's Club.

Your Honor, I would proffer to the Court three photographs, all of which have already been given to the defendant on a much earlier date.

The first is Government's Exhibit No. 1 with today's date.  This is a still photograph that was attached to one of the emails sent to the defendant by his associate.  It shows the defendant from the rear right-hand position holding the rifle pointing it down range.

Government Exhibit No. 2 is a photograph taken at the same location.  The defendant is seen sitting on a bench with the rifle muzzle down in front of him leaning against the bench.

1          Government Exhibit No. 3, Your Honor, is a

2    photograph from the same location simply showing for the Court

3    the benches as they were arranged at the Sportsmen's Club that

4    day.

5          Two of the emails, which were sent by the

6    defendant's associate to him later that same day on the 4th of

7    July, were sent at seven p.m. and had six photographs attached

8    and at 7:28 p.m. and had two videos attached.

9          Your Honor, the government would also offer

10   evidence from an individual named Jason Katinski (phonetic),

11   who was present at the Sportsmen's Club that day with his

12   father and two other individuals.  They were firing guns at

13   targets, as was the defendant and his associates.

14         Mr. Katinski was interviewed by the FBI and would

15   be prepared to testify that he recalled three individuals, two

16   black males and a white male, arriving at the Sportsmen's Club

17   that day.  He recalls that they had with them a .22 long rifle

18   and a .38-caliber pistol.

19         He recalled one individual dressed in what he

20   described as Muslim garb and he identified that as the white

21   male and discussed a rope-like garment, a cap on his head and

22   a long reddish beard.

23         He was shown a 7-second video, Your Honor.  This

24   was one of the videos sent by Mr. Al-Akili's associates to him

25   on the 4th of July 2010.

1    On that video, Your Honor, the defendant is shown

2    with the gun pointing down range but there's no firing taking

3    place and a person's voice is heard coming in and Mr. Al-Akili

4    is seen turning in profile and looking to his left.

5    Mr. Katinski would identify the speaker at that

6    time as his father, who was one of the persons related to the

7    Sportsmen's Club who was attempting to enforce a rule at the

8    Sportsmen's Club.

9    He also identifies the defendant in the video as

10   the person he recalls from that particular day.

11   Your Honor, the government also has available to

12   testify another of the individuals who were with Mr. Katinski,

13   who would essentially affirm his outline of the events that

14   took place on the 4th of July, 2010.

15   Your Honor, the government also has available an

16   additional video that was sent by Mr. Al-Akili's associate to

17   him on the day in question, that is the 4th of July, 2010.

18   This is a 23-second video which shows the defendant from the

19   right rear in much the same view as the photograph

20   Government's No. 1 which I gave to the Court.

21   In this you can see the defendant firing the gun

22   three times down range toward the target.  You can hear him

23   speaking to his associates and them speaking to him relative

24   to whether or not he has, in fact, hit the target.

25   Your Honor, the government also has available an

1    FBI computer analyst who would testify that the videos that

2    were attached to the email, the email having borne the date of

3    July the 4th, 2010, when he examined the file format -- excuse

4    me -- the exchangeable image file format data embedded in the

5    videos, they show that the videos had been produced, that is,

6    they had been taken on the 4th of July, 2010.

7           Now, the FBI computer analysis witness would

8    testify that the date mechanism, that is the dating mechanism

9    on the video camera, could have been manipulated by someone to

10   impose some other date, that is, it's an adjustable mechanism,

11   but the government would argue that the date is consistent

12   with the date of the email traffic and the date is consistent

13   with the recollection of the civilian witnesses present at the

14   Sportsmen's Club on the 4th of July, 2010.

15          Finally, the government has available Mr. Joseph

16   Bartozi (phonetic) of the Mossberg Firearms Company.

17   Mr. Bartozi is currently General Counsel and Director of

18   Technical Services for Mossberg Firearms.

19          He has worked for Mossberg for 26 years, beginning

20   on the production floor actually building and assembling

21   weapons, rising through the rank of marketing management to

22   become their General Counsel and their Director of Technical

23   Services.

24          He examined the photographs of the rifle as

25   depicted in the pictures which we've proffered to the Court

1  and indicated that he used devices to magnify and enlarge the

2  images to give them greater scrutiny.  I would note as a

3  precedent to his testimony, the government does not have

4  possession of the rifle in this case.

5           The owner of the rifle testified that it was lost

6  or stolen and could not locate it.

7           Mr. Bartozi would say his magnified view of the

8  firearm in question, he was able to identify nine separate

9  characteristics that allowed him to say with certainty that

10 this was a Mossberg .380.  He just could not say with

11 certainty whether it was a .380 or .380-S.

12          They are two models of the same weapon with very

13 slight variations but what he said, and I quote, I don't

14 believe any serious firearms examiner could say that the rifle

15 in question is not a Mossberg.

16          The significance, of course, Your Honor, being that

17 Mossberg has its production facilities in Connecticut and has

18 had as long as they have been making weapons, so any rifle

19 produced by Mossberg would have had to travel in interstate

20 commerce to get to the Commonwealth of Pennsylvania.

21          Your Honor, the government would also offer into

22 evidence the certified copy of the record from Westmoreland

23 County relative to the counts of conviction that were

24 identified in the indictment coming from Criminal Action

25 No. 4504C1999.  These have been provided to the defense.  I

1    have the copy here, Your Honor.

2            The Court would note it's very thick.  It's not

3    just the information but it's all the attached documentation.

4            With the Court's permission, I'll give this back to

5    the probation office because they're going to use it in part

6    in their preparation of the presentence report.

7            THE COURT:  That permission is granted.

8            MR. WILSON:  Your Honor, that is an outline of the

9    testimony that the government would offer to meet the three

10   elements which I previously identified.

11           THE COURT:  Thank you, Mr. Wilson.

12           Mr. Al-Akili, having heard the summary of the

13   prosecution's case of your conduct, do you agree with the

14   prosecution's summary of what you did?

15           THE DEFENDANT:  Everything that he said that I did

16   is true.  I agree.

17           THE COURT:  Is there anything as to what he said

18   you did with which you disagreed?

19           THE DEFENDANT:  No, sir.

20           THE COURT:  Are there any additions or corrections

21   you wish to make to the summary?

22           THE DEFENDANT:  No, sir.

23           THE COURT:  Mr. Al-Akili, is it still your desire

24   to enter a plea of guilty?

25           THE DEFENDANT:  Yes, sir.

```
 1              THE COURT:  Ms. Sims, is that consistent with your

 2   advice?

 3              MS. SIMS:  It is, Your Honor.

 4              THE COURT:  Mr. Al-Akili, are you satisfied in all

 5   respects with the advice and representation which you have

 6   been provided by your lawyer, Ms. Sims?

 7              THE DEFENDANT:  Yes, sir.

 8              THE COURT:  Mr. Al-Akili, as to Count 1 of the

 9   indictment, did you on or about July 4, 2010, knowingly

10   possess, in and affecting interstate commerce, a .22-caliber

11   rifle, after having been previously convicted in the Court of

12   Common Pleas of Westmoreland County, Pennsylvania, of two

13   felonies, each being a crime punishable by imprisonment for a

14   term exceeding one year, namely, possession with intent to

15   deliver a controlled substance and delivery of a controlled

16   substance, all as set forth in the indictment I summarized for

17   you a few minutes ago?

18              THE DEFENDANT:  Yes, sir.

19              THE COURT:  How do you plead to those charges?

20              THE DEFENDANT:  Guilty.

21              THE COURT:  The Court finds that the defendant is

22   competent, that he knows and understands his right to a jury

23   trial and the consequences of waiving that right, and that he

24   knows what the minimum and maximum penalties are and that

25   there is a factual basis for his plea of guilty.
```

1          The Court, therefore, accepts the defendant's

2    guilty plea and hereby adjudges Khalifa Ali Al-Akili guilty of

3    the crime set forth in Count 1 of the referenced criminal

4    indictment.

5          Mr. Al-Akili, since you acknowledge that you are,

6    in fact, guilty as charged in Count 1 of the indictment, since

7    you know your right to a trial, since you know what the

8    minimum and maximum possible penalties are, and since you are

9    voluntarily pleading guilty, the Court accepts your guilty

10    plea and enters a judgment of guilty on your plea.

11          Mr. Babik, will you please arrange for the

12    defendant and counsel for the defendant to sign the

13    arraignment plea document.

14          (Whereupon, counsel and defendant sign document.)

15          THE COURT:  The Court has been handed a one-page

16    document bearing the caption United States of America,

17    plaintiff, versus Khalifa Ali Al-Akili, defendant, at Docket

18    No. 12-cr-91.  It's entitled "Change of Plea" and it reads:

19          And now the defendant in the above-entitled case

20    hereby withdraws his plea of not guilty and now pleads guilty

21    to Count 1 in open court this 27th day of November, 2010.

22          There is a line which bears the typed notation

23    "Defendant's Signature," which bears a signature.

24          Mr. Al-Akili, is that, in fact, your signature on

25    that line?

 1              THE DEFENDANT:  Yes, sir.

 2              THE COURT:  By affixing your signature to this

 3    document, did you intend to confirm in writing your entry of a

 4    plea of guilty to Count 1 of the indictment?

 5              THE DEFENDANT:  Yes, sir.

 6              THE COURT:  Ms. Sims, there's a second line which

 7    bears the typed title "Attorney for Defendant's Signature."

 8    There is a signature on that line.  Whose signature is that?

 9              MS. SIMS:  My signature.

10              THE COURT:  By doing so, did you intend to confirm

11    your signature on this change of plea document?

12              MS. SIMS:  I did.

13              THE COURT:  That document will be entered into the

14    record.

15              The exhibits provided by Mr. Wilson on behalf of

16    the United States during his provision of a summary of the

17    essential elements of the offense and the evidence that would

18    be induced by the government will be received in the record.

19              The Court hereby orders that a Presentence

20    Investigation Report be prepared by the United States Office

21    of Probation and Pretrial Services.

22              Mr. Al-Akili, that report will be very important to

23    the Court in its decision as to your sentence in this case.

24              Pursuant to our Local Rules of Criminal Procedure,

25    you and your attorney will have an opportunity to examine the

1    report that is prepared.  You will have the right and the

2    opportunity to present information to the Court concerning any

3    matters in the report with which you dispute.

4           The United States will be given that very same

5    opportunity.

6           Counsel should be aware of the provisions set forth

7    in the Court's Local Rules of Criminal Procedure concerning

8    the methods of the resolution of disputes concerning factors

9    that are relevant to sentencing.  The Court anticipates that

10   counsel will comply with those provisions.

11          I will in the next day or so enter an order setting

12   forth various dates for certain presentence activities.  I

13   will ask counsel please review it carefully.  Sentencing will

14   be set for March 21, 2013, at 10:00 a.m.

15          Ms. Sims, is there any other matter you or

16   Mr. Al-Akili wish to bring to the Court's attention?

17          MS. SIMS:  No, Your Honor.

18          THE COURT:  Mr. Al-Akili, is there any other matter

19   you would like to bring to my attention at this time?

20          THE DEFENDANT:  I just want to say for the record,

21   that I'm acknowledging my guilt and what I did and I believe

22   it's in my best interest to plead guilty because of the

23   severity of the amount of time I could face if I went to

24   trial; but for the record, I just want to state that I believe

25   this is a grave injustice because ten years is a lot of time.

1          Your Honor, I didn't know I was breaking the law.

2     I didn't know I was breaking the law when I went to the gun

3     range.  When my friends invited me to the gun range, I didn't

4     realize that was actual possession as a felon.  I didn't have

5     no understanding of that and my wife, she is not a citizen of

6     this country and I have a daughter.

7          That is really rough to accept the fact I have to

8     do ten years of my life in prison for something where I didn't

9     hurt nobody.

10          THE COURT:  Mr. Al-Akili, the Court acknowledges

11     your statement and what you said.  I feel duty bound to just

12     confirm is it still your intention and is it your intention

13     that you enter and I accept your plea of guilty to the charge

14     in the indictment?

15          THE DEFENDANT:  Yes, sir.

16          THE COURT:  Ms. Sims, are you comfortable with my

17     acceptance and entry of a plea of guilty on the charge of the

18     indictment based on the statement just made by your client?

19          MS. SIMS:  Your Honor, I'm feeling very

20     uncomfortable with the entire situation but it is my advice

21     that Mr. Al-Akili enter his plea.

22          THE COURT:  Let me raise the question in fairness

23     to you.  Is there any reason I shall not accept the plea of

24     guilty on Count 1 of the indictment given Mr. Al-Akili's

25     reaffirmation of the plea?

```
 1                MS. SIMS:  There is not.
 2                THE COURT:  Mr. Wilson, anything further from you
 3    or you wish to bring to my attention?
 4                MR. WILSON:  Nothing.  Thank you.
 5                THE COURT:  Mr. Wilson and Ms. Sims, it's my
 6    understanding defendant is now in the custody of the United
 7    States and he will remain so pending sentencing in this case
 8    is that correct?
 9                MS. SIMS:  Yes.
10                THE COURT:  Is that correct, Mr. Wilson?
11                MR. WILSON:  Yes.
12                THE COURT:  With that, Mr. Wilson, is there any
13    other matters we should take up at this time?
14                MR. WILSON:  Nothing.  Thank you.
15                THE COURT:  Ms. Sims, is there any other matters we
16    should take up at this time?
17                MS. SIMS:  No, Your Honor.
18                THE COURT:  With that, the proceedings for today
19    are concluded.
20                Mr. Babik, I will provide you with the original of
21    the signed plea agreement, along with the two documents that
22    were tendered by Mr. Wilson during his statement of the
23    summary of evidence, along with the executed change of plea
24    agreement.
25                Let the record reflect that this morning the Court
```

1    did receive by Federal Express delivery a letter regarding

2    sentencing factors that states it is from Mr. Al-Akili's

3    spouse.

4                I have provided copies of that letter to counsel

5    for the defendant and to counsel for the United States.

6                Is that correct, Ms. Sims?

7                MS. SIMS:  Yes, Your Honor.

8                THE COURT:  Is that correct, Mr. Wilson?

9                MR. WILSON:  Yes, sir.

10               THE COURT:  With that, the record is closed and the

11   Court is adjourned.

12                    (Whereupon, the proceedings were concluded.

13                         -  -  -

14

15

16

17               I hereby certify by my original signature herein,

18               that the foregoing is a correct transcript, to the

19               best of my ability, from the record of proceedings

20               in the above-entitled matter.

21

22

23          S/ Karen M. Earley

24             Karen M. Earley

25             Certified Realtime Reporter